# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2013

No. 11-10543

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JESUS JAVIER GARZA,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Jesus Javier Garza violated the conditions of his supervised release and was sentenced to twenty-four months of imprisonment to be followed by twenty-four months of supervised release. On appeal, Garza argues that the district court improperly considered his rehabilitative needs in determining the length of his prison sentence in violation of *Tapia v. United States*,[1] which held that "a court may not impose or lengthen a prison sentence to enable an offender to

---

[1] 131 S. Ct. 2382 (2011).

complete a treatment program or otherwise to promote rehabilitation."[2] We vacate and remand for resentencing.

## I

Garza pleaded guilty to possession with intent to distribute methamphetamine and was sentenced to fifty-five months in prison to be followed by a five-year term of supervised release. Garza began serving that term of supervised release on August 1, 2008. When Garza allegedly violated a number of the conditions of his supervised release, the Government filed a motion to revoke supervised release pursuant to 18 U.S.C. § 3583(e).

At his revocation hearing, Garza pleaded true to all of the factual allegations in the Government's motion to revoke, with one exception, and the court revoked Garza's supervised release. Although the advisory Sentencing Guidelines range was three to nine months of imprisonment, the district court imposed a sentence of twenty-four months in prison, to be followed by a twenty-four month term of supervised release. In the course of imposing this sentence, the district court extensively discussed the rehabilitation opportunities that prison terms of varying lengths would afford Garza. This appeal followed.

## II

A threshold question in this appeal is whether 18 U.S.C. § 3582(a) applies to revocation sentences. In *Tapia*, the Supreme Court held that, under § 3582(a), a sentencing court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."[3] However, *Tapia* was an appeal of a sentence imposed for the initial conviction, and although our court has assumed that its holding extends

---

[2] *Tapia*, 131 S. Ct. at 2393.

[3] *Id.*

No. 11-10543

to the revocation context,[4] we have never so held.  The Government concedes that *Tapia* applies to revocation sentences, and we agree.  In so holding, we join the uniform post-*Tapia* case law in our sister circuits.[5]

The factors set forth in 18 U.S.C. § 3553(a) that a district court should consider in imposing a sentence apply when supervised release is revoked.[6] These factors  include "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."[7]  However, with regard to determining if imprisonment should be imposed as part of a sentence and if so, the length of the term of imprisonment, § 3582(a) directs a district court to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."[8]

The wording and context of § 3582(a) persuades us that it applies in the revocation context.  First, in the same sentence in § 3582(a) that admonishes

---

[4] *E.g.*, *United States v. Receskey*, 699 F.3d 807, 810 (5th Cir. 2012).

[5] *United States v. Bennett*, 698 F.3d 194 (4th Cir. 2012); *United States v. Mendiola*, 696 F.3d 1033 (10th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005 (8th Cir. 2012); *United States v. Grant*, 664 F.3d 276 (9th Cir. 2011); *United States v. Molignaro*, 649 F.3d 1 (1st Cir. 2011) (Souter, J. (Ret.), sitting by designation); *see also United States v. Jackson*, 477 F. App'x 377 (6th Cir. 2012) (applying *Tapia* to a revocation sentence without discussion of its applicability); *United States v. Williams*, 467 F. App'x 59 (2d Cir. 2012) (assuming without deciding that *Tapia* applies to revocation sentences).  The only outlier was our own decision in *United States v. Breland*, 647 F.3d 284 (5th Cir. 2011), which the Supreme Court vacated, 132 S. Ct. 1096 (2012) (mem.), and in which case we ultimately remanded for resentencing, 463 F. App'x 376, 376-77 (5th Cir. 2012).  Although we need not today revisit our prior decision in *United States v. Giddings*, 37 F.3d 1091 (5th Cir. 1994), which held that § 3582(a) does not apply to mandatory revocation while expressly reserving the question of whether the statute applied to discretionary revocation, we note that *Tapia* casts substantial doubt on the continuing vitality of *Giddings*'s holding.

[6] *See* 18 U.S.C. § 3553(a)(4)(B).

[7] *Id.* § 3553(a)(2)(D).

[8] *Id.* § 3582(a).

courts that they cannot use imprisonment as a means of correction or rehabilitation, Congress directs courts to consider the factors set forth in § 3553(a) "to the extent they are applicable."[9]  As already noted, a sentence imposed for a violation of supervised release comes within § 3553(a), and a court is directed by § 3553(a)(3) and (a)(4)(B) to consider the kinds of sentences available and the applicable sentencing range established by the Guidelines or the Commission's policy statements.[10]  This would include a term of imprisonment, if available.  It therefore stands to reason that the subsequent part of the phrasing in § 3582(a) that prohibits consideration of rehabilitative needs applies to a prison term imposed upon revocation of supervised release.

Second, § 3582(a) is quite clear: "*imprisonment* is not an appropriate means of promoting correction and rehabilitation."[11]  The phrasing of this statute does not suggest that it applies only when a sentence is imposed for the underlying conviction but that in the revocation context, promoting rehabilitation can be considered in deciding whether to impose a prison sentence and if so, the length of confinement.[12]  While it is true that the statute

---

[9] Section 3582(a), titled "Factors to be considered in imposing a term of imprisonment," states as follows:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.  In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court shall consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2).

*Id.*

[10] *Id.* § 3553(a)(3), (a)(4)(B).

[11] *Id.* § 3582(a) (emphasis added).

[12] *United States v. Bennett*, 698 F.3d 194, 197 (4th Cir. 2012); *United States v. Grant*, 664 F.3d 276, 281 (9th Cir. 2011); *United States v. Molignaro*, 649 F.3d 1, 2 (1st Cir. 2011) (Souter, J. (Ret.), sitting by designation); *see also United States v. Mendiola*, 696 F.3d 1033,

No. 11-10543

authorizing revocation of supervised release, 18 U.S.C. § 3583(e), speaks in terms of "requir[ing] the defendant to serve *in prison*" rather than "imposing . . . *imprisonment*" as in § 3582(a),[13] we agree with the Court of Appeals for the Fourth Circuit that this is a "distinction in search of significance."[14]  As the Fourth Circuit noted, this is particularly true in light of the Supreme Court's adoption of a broad definition of "imprisonment" as "[t]he state of being confined or a period of confinement."[15]  "The *Tapia* Court's unanimous conclusion was that where actual incarceration is involved, Congress did not intend for courts to consider rehabilitation in determining the fact or length of the sentence."[16]

Third, *Tapia*'s reasoning was not limited to the text of § 3582(a).  "Equally illuminating," the Court explained, "is a statutory silence—the absence of any provision granting courts the power to ensure that offenders participate in prison rehabilitation programs."[17]  Unlike the statutes governing probation or supervised release, in which Congress gives courts authority to order participation in rehabilitation programs, the provisions governing the imposition of prison terms grant courts no such authority.[18]  "That incapacity speaks

---

1043 (10th Cir. 2012) (Gorsuch, J., concurring) ("From [*Tapia*], it follows ineluctably (plainly) that § 3582(a) prohibits a court from relying on rehabilitation considerations *any* time it chooses to send someone to a term of confinement in a federal prison . . . ." (citing *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011))).

[13] *Compare* 18 U.S.C. § 3583(e)(3) (emphasis added), *with id.* § 3582(a) (emphasis added).

[14] *Bennett*, 698 F.3d at 197; *see also Molignaro*, 649 F.3d at 2-3 (dismissing a similar argument based on this distinction).

[15] *Bennett*, 698 F.3d at 198 (alteration in original) (quoting *Tapia*, 131 S Ct. at 2389) (internal quotation marks omitted).

[16] *Id.* at 197 n.*.

[17] *Tapia v. United States*, 131 S. Ct. 2382, 2390 (2011).

[18] *Id.*

volumes. It indicates that Congress did not intend that courts consider offenders' rehabilitative needs when imposing prison sentences."[19]

As JUSTICE SOUTER, writing for the Court of Appeals for the First Circuit, observed, "There is nothing tentative about this reasoning: if Congress wanted judges to consider rehabilitation, it gave judicial authority to control [whether a defendant participated in such a program]."[20] Since there is a similar absence of authority for district courts to mandate participation in rehabilitation programs while serving a term of imprisonment on revocation, we are bound to conclude that a sentencing court may not consider rehabilitative needs in imposing or lengthening any term of imprisonment.

### III

Having resolved that 18 U.S.C. § 3582(a) applies to a revocation sentence, we must determine whether the district court improperly considered Garza's rehabilitative needs in imposing a prison sentence. We conclude, based on the district court's comments at sentencing, that it did so in this case.

As noted, § 3582(a) proscribes the use of a defendant's rehabilitative needs in imposing a prison term or in calculating the length of the defendant's prison sentence. This does not mean, however, that a district court may make *no* reference to the rehabilitative opportunities available to a defendant. To the contrary, in *Tapia* the Court made clear that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs."[21] A district court also may legitimately "urge the [Bureau of Prisons] to place an offender in a prison treatment

---

[19] *Id.* at 2391.

[20] *United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011) (Souter, J. (Ret.), sitting by designation).

[21] *Tapia*, 131 S. Ct. at 2392.

program."[22]  However, when the district court's concern for rehabilitative needs goes further—when the sentencing record discloses "that the court may have calculated the length of [the defendant's] sentence to ensure that she receive certain rehabilitative services"[23]—§ 3582(a) has been violated.

Our limited precedent post-*Tapia* has described the distinction between legitimate commentary and inappropriate consideration as whether rehabilitation is a "secondary concern" or "additional justification" (permissible) as opposed to a "dominant factor" (impermissible) informing the district court's decision.[24]  For example, in *United States v. Receskey*,[25] the district court discussed the potential rehabilitative opportunities available to a defendant only after discussing its independent, unrelated reasons for selecting the length of the defendant's sentence.[26]  This court held that the sentencing court had committed no *Tapia* error.[27]  By contrast, in *United States v. Broussard*,[28] the district court first described in detail the need to incarcerate a defendant for a long period

---

[22] *Id.*

[23] *Id.* at 2393.

[24] *United States v. Receskey*, 699 F.3d 807, 810, 812 (5th Cir. 2012) (internal quotation marks omitted).

[25] 699 F.3d 807.

[26] *Receskey*, 699 F.3d at 808-09.

[27] *Id.* at 812.  Similar cases from other circuits include *United States v. Gilliard*, 671 F.3d 255 (2d Cir. 2012) (district court discussed rehabilitation but stated that, at bottom, any arguments for a lower sentence were "outweighed by what [the court] consider[ed] to be the high, high likelihood of recidivism and the serious nature of the crime committed and the crimes committed in the past" (alterations in original)), *United States v. Lucas*, 670 F.3d 784 (7th Cir. 2012) (district court "briefly mentioned" rehabilitation programs after imposing the sentence), and *United States v. Pickar*, 666 F.3d 1167 (8th Cir. 2012) (district court emphasized that the defendant needed to be deterred and was a danger to the public, and then noted that a longer sentence would provide the defendant with needed care and treatment).

[28] 669 F.3d 537 (5th Cir. 2012).

No. 11-10543

given the seriousness of his offense and the need to deter those who would engage in similar conduct.[29]  The court, however, then went on to describe the defendant as "sick in the head" and as "need[ing] help badly," among other things, and noted that although avoiding sentencing disparaties across cases is a goal in sentencing, it was "not as compelling as the need to incarcerate this individual for the treatment that he needs."[30]  This court held that the district court improperly considered the defendant's rehabilitative needs in arriving at the length of his sentence.[31]

The record in the present case reflects that after noting generally that the Guidelines range of three to nine months of imprisonment "would not begin to address" Garza's conduct and "wouldn't satisfy the objectives applicable to revocation," the court opined that Garza "should be required [or] at least be given an opportunity to participate in that residential institution drug treatment program" in order to "get [Garza] straightened out."  The court then embarked on a detailed discussion with the probation officer and Garza's attorney regarding the rehabilitation programs that would be available to Garza if he

---

[29] *Broussard*, 669 F.3d at 551.

[30] *Id.* at 551-52 (internal quotation marks omitted).

[31] *Id.* at 552.  Similar cases from other circuits include *United States v. Mendiola*, 696 F.3d 1033 (10th Cir. 2012) (district court stated that it was sentencing the defendant to twenty-four months so he could participate in the Bureau of Prisons' drug program), *United States v. Taylor*, 679 F.3d 1005 (8th Cir. 2012) (district court stated that it was sentencing the defendant to twenty-four months so he could participate in a particular program available through the Bureau of Prisons), *United States v. Grant*, 664 F.3d 276 (9th Cir. 2011) (district court emphasized that the defendant needed a sentence of twenty-four months to be placed into rehabilitation programs), and *United States v. Molignaro*, 649 F.3d 1 (1st Cir. 2011) (district court stated generally that the Guidelines range would not address the defendant's conduct and then imposed a longer sentence so that the defendant could participate in a rehabilitation program).

No. 11-10543

were sentenced to twenty-four months or thirty months in prison.[32]  During

---

[32] The breadth and depth of this discussion reflects that rehabilitative opportunities were considered by the court in determining the length of the prison term to be served:

> THE COURT: I'm impressed with the length of time you went on your supervised release before you started having problems.  So you can do it, it looks like, if you worked on it, but I think you need some help.
>
> GARZA: Yes, Your Honor.
>
> THE COURT: Ms. Roper [sic], if he has a 30-month sentence, will they let him participate in the [long-term RDAP] program, or is that not long enough?
>
> PROBATION OFFICER: Your Honor, it could be enough time.  I believe if there were only 24 months, he would not be eligible at all.  Probably on a 30 month, he would be able to get his name on the list.
> And I do see here in the record where he did participate in the RDAP program and did fine in that program while he was with the Bureau of Prisons previously.  In addition, there are other programs that he can take other than the long term one.  There are other courses he can take as well.
>
> THE COURT: That would be appropriate if he had, say, a 24 month sentence?  Are there some programs?
>
> PROBATION OFFICER: He could probably take the 40-hour program and also take the relapse prevention program and focus on how to remain clean. I mean, he's done it in the past like we've seen, but he needs to focus more on the relapse prevention.
>
> THE COURT: Well, do you think those programs you just mentioned would be helpful for him?
>
> PROBATION OFFICER: Yes, I believe so.  The RDAP program, the long term [sic] is actually an inpatient program within the institution where they are housed in the same dormitories as all those going through an inpatient program.
>
> THE COURT: And he's been through that?
>
> PROBATION OFFICER: And he's been through that.
>
> THE COURT: Okay.  Well, I'm going to—
>
> GARZA'S ATTORNEY: Your Honor, may I interject?
>
> THE COURT: Yes.
>
> GARZA'S ATTORNEY: It was my understanding that Mr. Garza would be eligible for the RDAP program based on a sentence of 24 months.  I'm not aware of it being 30 months.  I thought it was 24 months.
>
> THE COURT: You're talking about the residential institutional program, whatever they call it?

this colloquy, the court made clear that rehabilitation was a standard factor it considered, stating, "[F]or a long time, years, I thought 24 months was enough [to get a defendant into a particular program], and I would sentence people to 24 months thinking that would be enough, and they didn't get to participate in the program." Finally, after learning that a twenty-four month sentence would allow Garza to participate in programs that the probation officer thought would help Garza, the court announced its sentence as follows:

> I'm going to sentence this defendant to 24 months. I'm not going to give him enough time to participate in the long term program, because I don't think he really needs that again. I think some of these shorter term programs ought to be enough for him. . . . I'm hoping a 24 month term of imprisonment followed by a 24 month term of supervised release will be enough. I hope so because I don't want him to be up here again.

The court offered no additional justifications for the sentence it imposed.

The record makes clear that Garza's rehabilitative needs were the dominant factor in the court's mind. Although the record suggests that the court might have been inclined to impose *some* upward departure in light of Garza's conduct, it relied *only* on Garza's rehabilitative needs in fixing the length of Garza's sentence. If the only factor emphasized by the court is rehabilitation,

---

> GARZA'S ATTORNEY: Yes, Your Honor. I just wanted to point out that it was my understanding that the defendant needed to be sentenced to a minimum of 24 months to be eligible for the program and—
>
> THE COURT: You're talking about what we referred to as the long-term program?
>
> GARZA'S ATTORNEY: Yes. That's my understanding, Your Honor.
>
> THE COURT: Okay. Well, I think your understanding is wrong because we've been informed by the Bureau of Prisons that that's not enough time. . . .
>
> [Y]ou may want to double check on that, but for a long time, years, I thought that 24 months was enough, and I would sentence people to 24 months thinking that would be enough, and they didn't get to participate in that program. We finally explored and discovered the reason. It just wasn't enough time. . . .

No. 11-10543

it *a fortiori* cannot be that rehabilitation was merely a secondary concern. Additionally, the court made clear that it was its standard practice to tailor the prison sentence to the availability of rehabilitation programs. In light of these facts, the district court committed error under *Tapia*.

## IV

Having found error, we must determine whether that error is reversible. The Supreme Court had not issued *Tapia* at the time Garza's sentence was imposed. Garza made no objection to the district court's consideration of rehabilitative programs in deciding the term of imprisonment. Accordingly, we may vacate the sentence only if the error is plain.[33]

> When reviewing for plain error, we apply the following four-pronged test:
>
> (1) there must be an error or defect—some sort of [d]eviation from a legal rule—that has not been intentionally relinquished or abandoned; (2) the legal error must be clear or obvious, rather than subject to reasonable dispute; (3) the error must have affected the appellant's substantial rights; and (4) if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.[34]

As we have explained, Garza has demonstrated that the district court erred. We therefore are concerned only with second, third, and fourth prongs.

With respect to the second prong, we make the determination based on the state of the law at the time of the appeal, not at the time of trial.[35] Although, until today, this court had not definitively answered whether § 3582(a) applies

---

[33] *United States v. Whitelaw*, 580 F.3d 256, 259-60 (5th Cir. 2009).

[34] *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alterations in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (internal quotation marks omitted).

[35] *Id.* at 423.

No. 11-10543

to revocation prison sentences, the post-*Tapia* case law in our sister circuits has uniformly held that *Tapia* applies to revocation sentences.[36] The error was clear or obvious by the time of this appeal.[37]

There is little question that the error affected Garza's substantial rights. Under this prong, "the defendant must demonstrate that the error affected the outcome of the district court proceedings."[38] "In the context of sentencing, we ask 'whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand.'"[39] In this case, the prison term suggested by the Guidelines was three to nine months, and the district court imposed a prison term of twenty-four months, a substantial upward departure. Although the court arguably indicated that it might have imposed *some* above-Guidelines sentence due to Garza's conduct, it focused only on the rehabilitative options that different sentences would afford Garza in fixing the length of Garza's sentence. The combination of the disparity between the Guidelines range and the court's statements at sentencing are "sufficient to undermine our confidence that the district court would have imposed the same

---

[36] *United States v. Bennett*, 698 F.3d 194 (4th Cir. 2012); *United States v. Mendiola*, 696 F.3d 1033 (10th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005 (8th Cir. 2012); *United States v. Grant*, 664 F.3d 276 (9th Cir. 2011); *United States v. Molignaro*, 649 F.3d 1 (1st Cir. 2011) (Souter, J. (Ret.), sitting by designation); *see also United States v. Jackson*, 477 F. App'x 377 (6th Cir. 2012); *United States v. Williams*, 467 F. App'x 59 (2d Cir. 2012).

[37] *Mendiola*, 696 F.3d at 1042; *Taylor*, 679 F.3d at 1007; *Grant*, 664 F.3d at 279; *cf. United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007) ("Because this circuit's law remains unsettled *and the other federal circuits have reached divergent conclusions on this issue* . . . , Salinas cannot satisfy the second prong of the plain error test—that the error be clear under existing law." (emphasis added) (citing *United States v. Bennett*, 469 F.3d 46, 50 (1st Cir. 2006), *and United States v. Thompson*, 82 F.3d 849, 856 (9th Cir. 1996))).

[38] *United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012) (citing *Puckett*, 556 U.S. at 135 (2009)).

[39] *Escalante-Reyes*, 689 F.3d at 424 (quoting *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009)).

sentence absent the error."[40]  We conclude that Garza's substantial rights were violated.

Finally, we must assess whether the error in this case so "affects 'the fairness, integrity, or public reputation of judicial proceedings'" that we should exercise our discretion to correct it.[41]  In making that determination, we do not assume that this prong is automatically satisfied if we find prejudicial error under the third prong.[42]  With that caveat in mind, and following this Court's own precedent in *United States v. Escalante-Reyes*[43] as well as that of our sister circuits,[44] we believe that this case merits reversal.

*     *     *

For the foregoing reasons, Garza's sentence is VACATED and the case is REMANDED for resentencing consistent with this opinion.

---

[40] *Id.* at 425.

[41] *Id.* (quoting *Puckett*, 556 U.S. at 135).

[42] *United States v. Reyna*, 358 F.3d 344, 352 (5th Cir. 2004) (en banc).

[43] 689 F.3d 415, 425-26.

[44] *United States v. Mendiola*, 696 F.3d 1033, 1042 (10th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005, 1007 (8th Cir. 2012); *United States v. Grant*, 664 F.3d 276, 282 (9th Cir. 2011)

No. 11-10543

CATHARINA HAYNES, Circuit Judge, dissenting:

I respectfully dissent. I agree that *Tapia* applies to sentences of imprisonment upon revocation of supervised release. I disagree that the district court here lengthened the sentence of imprisonment in order to provide rehabilitation, which is the error *Tapia* condemns.[1] *United States v. Receskey*, 699 F.3d 807, 810 (5th Cir. 2012) ("*Tapia*, however, made clear that district courts do not err by discussing the rehabilitative opportunities within prison.").

After beginning his supervised release following a conviction for possession of methamphetamine with intent to distribute, Garza does not dispute that he regressed back into drug use and other violations of his supervised release conditions. At his sentencing upon revocation of supervised release, the district court engaged in a lengthy colloquy with the defendant and his lawyer about the defendant's experience on supervised release, what led to the conduct that gave rise to the revocation, and his prior periods of confinement. After that colloquy, in which the court observed that a prior sentence had been very lenient, the court stated: "I've considered the policy statement range of three to nine months and that would not begin to address your conduct. It wouldn't satisfy the objectives of sentencing applicable to revocation in my view."

The court then addressed the issue of treatment programs in prison, asking if a 30-month sentence would be long enough to allow participation in such a program. The probation officer indicated: "[I]t could be enough time. I believe if there were only 24 months, *he would not be eligible at all.* Probably on a 30 month, he would be able to get his name on the list." The probation officer and the district judge then discussed the availability of "shorter" courses;

---

[1] Nothing in the record suggests that the district court's consideration of whether to impose a sentence of imprisonment at all—the other type of *Tapia* error—was influenced by any consideration of rehabilitation.

14

No. 11-10543

however, nothing tying the length of those "shorter" courses to the length of imprisonment was discussed.[2]

At that point, the defendant's attorney interjected that he did not think 30 months were required to complete a "long-term" program; 24 months would be enough. Thus, not only did the defendant's attorney not object to consideration of prison treatment programs, he in fact furthered and seemed to agree with that consideration. Had the district court then pronounced a sentence of 24 months, the majority opinion's position would seem accurate. However, at that point, the district judge expressly disagreed with the defense attorney about 24 months being adequate to engage in such a program. The court then ultimately decided to impose a 24-month sentence. The import of this discussion is that the district court considered lengthening the defendant's sentence to allow for treatment in prison (i.e. "rehabilitation") but decided *not to do so.* That conclusion is buttressed by the signed judgment which provides as a condition of supervised release that the defendant shall undergo mental health and drug treatment but does not so much as recommend to the Bureau of Prisons any treatment while imprisoned.

On plain error review, given the totality of the record, I cannot agree that the district court erred. Accordingly, I would not reach the other prongs of plain error review. Therefore, I respectfully dissent.

---

[2] The only time period mentioned for the "shorter" courses was that one of the courses was a "40-hour course."

15